## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

Civil Case No.:

ALAN DAVIS and LESLIE DAVIS;
DONALD EASTER and THERESA EASTER;
BILLY LONG and LINDA LONG; JOYCE
MOORE; LONNIE ROUSER, SR.; and
RHONDA SHARKEY, individually, and
on behalf of all others similarly situated

Plaintiff


v.


THE 3M CORPORATION (f/k/a Minnesota
Mining and Manufacturing, Co),
THE ANSUL COMPANY,
ANGUS FIRE,
NATIONAL FOAM,
BUCKEYE FIRE PROTECTION CO.,
CHEMGUARD,

Defendants

---

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

---

Plaintiffs, ALAN DAVIS and LESLIE DAVIS; DONALD EASTER and THERESA

EASTER; BILLY LONG and LINDA LONG; JOYCE MOORE; LONNIE ROUSER, SR.; and

RHONDA SHARKEY, by and through their undersigned counsel, hereby files this Class Action

Complaint, individually, and on behalf of all others similarly situated, and makes these

allegations based on information and belief and/or which are likely to have evidentiary support

after a reasonable opportunity for further investigation and discovery against Defendant, THE

3M CORPORATION (f/k/a Minnesota Mining and Manufacturing, Co), Defendant, THE

ANSUL COMPANY, Defendant, ANGUS FIRE, Defendant, NATIONAL FOAM, Defendant, BUCKEYE FIRE PROTECTION CO., and Defendant CHEMGUARD, (collectively "Defendants") as follows:

## INTRODUCTION

**The Contamination of the Fountain, Security, and Widefield Communities**

1.     The Colorado communities of Fountain, Security, and Widefield are all located south of Colorado Springs. These communities receive their water from the Fountain Creek Watershed area.

2.     They are nearby and downgradient of the Peterson Air Force Base / Colorado Springs Airport, and Fort Carson.

3.     Airports as well as bases operated by the U.S. Air Force and other branches of the military, have used aqueous firefighting foams ("AFFF") and other materials containing perfluorooctanesulfonic acid ("PFOS") and related fluorochemicals that can degrade to perfluorooctanoic acid ("PFOA") or PFOS.

4.     These sites have been linked to the contamination of surface and groundwater with PFOA, PFOS and other perfluorinated chemicals ("PFCs") throughout the country.

5.     PFOA and PFOS that originated and was released from the Peterson Air Force Base, Colorado Springs Airport, and Fort Carson have contaminated the Fountain Watershed Area.

6.     PFOA has been detected in levels exceeding the current EPA Health Advisory Limit of 70 parts per trillion (ppt) in the Fountain Creek watershed area that provides water to these communities through both municipal water systems and private wells.

7.     Colorado cities in the Fountain Watershed Area are ranked among the hardest-hit of 63 areas nationwide where the EPA has found PFCs exceeding the 70 ppt limit.[1]

**Health Effects of PFOS and PFOA Exposure**

8.     PFOA, also known as C8 has been studied extensively by among others, a Science Panel that was formed out of a class action settlement from a lawsuit arising from contamination from DuPont's Washington Works located in Wood County West Virginia. This panel consisted of three epidemiologists who were specifically tasked with determining whether there was a probably link between C8 and human diseases. The panel found probable links between PFOA and kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, pregnancy induced hypertension (including preeclampsia), and hypercholesterolemia.

**Defendants Manufacture and Use of Aqueous Film Forming Foam ("AFFF")**

9.     The Defendants manufactured AFFF that contained fluorochemical surfactants, believed to include PFOS, PFOA, and/or certain other PFC's that degrade into PFOS or PFOA. As the manufacturers of AFFF, the Defendants knew or should have known that the inclusion of PFCs in AFFF presented an unreasonable risk to human health and the environment. Defendants also knew or should have known that PFCS are highly soluble in water, highly mobile, extremely persistent in the environment, and highly likely to contaminate water supplies if released to the environment.

10.     The Defendants marketed and sold their products with knowledge that large quantities of toxic, PFCs containing AFFF would be used in training exercises and in emergency situations at military bases and airports, including the Peterson Air Force Base, in such a manner that dangerous chemicals would be released into the environment.

---

[1] Bruce Finley, *Drinking water in three Colorado cities contaminated with toxic chemicals above EPA limits*, DENVER POST (Jun. 15, 2016, 4:08 PM), http://www.denverpost.com/2016/06/15/colorado-widefield-fountain-security-water-chemicals-toxic-epa/

11.     The Defendants marketed and sold their products with knowledge that large quantities of toxic, PFCs containing AFFF would be stored in fire suppressant systems and tanks on Air Force Bases and at airports and that such systems and storage were used and maintained in such a manner that dangerous chemicals would be released into the environment.

**Plaintiffs Exposure and Damages**

12.     Plaintiffs have suffered both personal injury and property damage as a result of the PFOA and PFOS contamination of their water supplies by AFFF that has entered the Fountain Creek Watershed area.

13.     The Plaintiffs and the class, as residents in the communities in the Fountain Creek Watershed area, have been exposed for many years to PFCs including at concentrations hazardous to their health.

14.     The properties of the Plaintiffs and the class have been damaged as a result of the presence of PFC's present in the groundwater and drinking water in both private and municipal wells.

15.     Plaintiffs seek recovery from Defendants for injuries, damages and losses suffered by the Plaintiffs, each of whom suffered injuries as a result of exposure to the introduction of PFOA, PFOS and other toxic substances into the drinking water of the Fountain Creek Watershed area, in an amount to be determined at trial, exclusive of interest, costs, and attorneys' fees.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (a)(1) and (d)(2) in that this action seeks monetary relief in excess of $75,000.00, exclusive of interest, costs and attorney's fees and is between citizens of different States.

4

17. Venue is appropriate in this judicial circuit pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in the District of Colorado.

## PARTIES

**PLAINTIFFS**

18. Plaintiffs Alan Davis and Leslie Davis are residents of Colorado Springs, Colorado, who currently reside at 451 Dexter St., Colorado Springs, CO 80911. They currently receive their water from a municipal well owned by the Widefield Water and Sanitation District. Their property has been tested for the presence of PFOA and elevated levels of PFOA were found to be present. The Davises have been exposed to PFOA, have elevated levels of PFOA in their blood, and are at an increased risk of several health effects, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

19. Plaintiffs Donald Easter and Theresa Easter are residents of Widefield, Colorado, who currently reside at 6860 Harding St., Colorado Springs, CO 80911. They currently receive their water from a municipal well owned by the Widefield Water and Sanitation District. Their property has been tested for the presence of PFOA and elevated levels of PFOA were found to be present. The Easters have been exposed to PFOA, have elevated levels of PFOA in their blood, and are at an increased risk of several health effects, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

20. Plaintiff Billy Long and Linda Long are residents of Fountain, Colorado, who currently reside at 102 Comanche Court, Fountain, CO 80817. They currently receive their water

from a municipal well owned by the Fountain Water District. Their property has been tested for the presence of PFOA and elevated levels of PFOA were found to be present. The Longs have been exposed to PFOA, have elevated levels of PFOA in their blood, and are at an increased risk of several health effects, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

21.     Plaintiff Lonnie Rouser, Sr. is a resident of Fountain, Colorado, who currently resides at 957 Bromefield Drive, Fountain, CO 80911. He currently receives his water from a municipal well owned by the Fountain Water District. His property has been tested for the presence of PFOA and elevated levels of PFOA were found to be present. Mr. Rouser has been exposed to PFOA, has elevated levels of PFOA in his blood, and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

22.     Plaintiff Joyce Moore is a resident of Security, Colorado, who currently resides at 208 Jasper Drive, Security, CO 80911. She currently receives her water from a municipal well owned by the Security Water District. Her property has been tested for the presence of PFOA and elevated levels of PFOA were found to be present. Ms. Moore has been exposed to PFOA, has elevated levels of PFOA in her blood, and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

23.     Plaintiff Rhonda Sharkey is a resident of Security, Colorado, who currently resides at 80 Davie Drive, Security, CO 80911. She currently receives her water from a municipal well owned by the Security Water District. Her property has been tested for the presence of PFOA and elevated levels of PFOA were found to be present. Ms. Moore has been

exposed to PFOA, has elevated levels of PFOA in her blood, and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

**DEFENDANTS**

24.     When reference is made in this Complaint to any act or omission of any of the Defendants, it shall be deemed that the officers, directors, agents, employees or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their duties, employment or agency.

25.     The term "Defendant" or "Defendants" refers to all Defendants named herein jointly and severally.

26.     Upon information and belief, each of the Defendants are responsible, negligently, intentionally and/or in some actionable manner, for the events and happenings referred to herein, and caused and continue to cause injuries and damages legally thereby to Plaintiffs, as alleged, either through each Defendant's own conduct or through the conduct of their agents, servants or employees, or due to the ownership, maintenance or control of the instrumentality causing them injury, or in some other actionable manner.

27.     Defendant 3M Company ("3M") is, upon information and belief, a Delaware corporation and does business throughout the United States, including conducting business in Colorado. 3M sold Aqueous Film Forming Foam (AFFF) used to fight fires at numerous military bases, airports, and other locations throughout the country.

28.     Defendant 3M is an American multinational corporation based in Maplewood, Minnesota. 3M was founded in 1902 as the Minnesota Mining and Manufacturing Company. With approximately $30 billion in annual net sales, 3M employs approximately 90,000 people, operates in approximately 70 countries, people and produces more than 55,000 products.

29.     Defendant 3M is subject to the jurisdiction of this Court pursuant to C.R.S. 13-1-124.

30.     3M is engaged in substantial and not isolated activity in this state; all as more fully alleged herein.

31.     Defendant The Ansul Company (hereinafter "Ansul ") is a Wisconsin corporation, having a principal place of business at One Stanton Street, Marinette, Wisconsin 54143. At all times relevant, Ansul manufactured fire suppression products, including AFFF that contained fluorocarbon surfactants containing PFCs.

32.     National Foam, Inc. (a/k/a Chubb National Foam) (National Foam, Inc. and Chubb National Foam are collectively referred to as "National Foam") is a Pennsylvania corporation, having a principal place of business at 350 East Union Street, West Chester, Pennsylvania 19382. At all times relevant, National Foam manufactured fire suppression products, including AFFF that contained fluorocarbon surfactants containing PFCs.

33.     Defendant Angus Fire is part of Angus International with its corporate headquarters in Bentham in the United Kingdom. Angus Fire has a place of business located in the United States at 141 Junny Road, Angier, NC 27501.

34.     At all times relevant to the present litigation Angus Fire was engaged in the manufacture, marketing, and sale of AFFF that contained PFOA, PFOS, and other toxic substances.

35.     Defendant Buckeye Fire Equipment Company is a North Carolina corporation with its principal place of business at 110 Kings Road, Mountain, NC 28086.

36.     At all times relevant to the present litigation Buckeye Fire Equipment Company was engaged in the manufacture, marketing, and sale of AFFF that contained PFOA, PFOS, and other toxic substances.

37.     Defendant Chemguard is a Wisconsin corporation having its principal place of business at One Stanton Street, Marinette, WI 54143.

38.     At all times relevant to the present litigation Chemguard was engaged in the manufacture, marketing, and sale of AFFF that contained PFOA, PFOS, and other toxic substances.

## FACTUAL ALLEGATIONS AS TO ALL COUNTS

**PFOA Background**

39.     Perfluorooctanoic acid (PFOA, also known as C8 or perfluorooctanoate) is a man-made, manufactured chemical not found in nature that belongs to a group of fluorine-containing chemicals called perfluorinated chemicals (PFC's). These chemicals were and are used to make household and commercial products that resist heat and chemical reactions, and repel oil, stains, grease, and water as well as other uses.

40.     In 1947, the Minnesota Mining and Manufacturing Company (3M) began producing PFOA via electrochemical fluorination.

41.     PFOA was once widely used in nonstick cookware, in surface coatings for stain-resistant carpets and fabric, and in paper and cardboard food packaging (such as microwave popcorn bags and fast food containers). PFOA was also used in fire-fighting foam and in many products for the aerospace, automotive, building/construction, and electronics industries.

42.    Over the years, a number of companies, including but not limited to, Arkema, Asahi, BASF, Clariant, Daikin, DuPont, and Solvay Selexis have manufactured PFOA within the United States.

43.    PFOA is a fluorine-containing chemical that is primarily used in the production of fluoropolymers such as poly-tetra-fluoro-ethylene ("PTFE").

44.    PFOA is readily absorbed after consumption or inhalation, and it accumulates primarily in the blood stream, kidney and liver.

45.    In 2006, eight major PFOA manufacturers agreed to participate in the U.S. Environmental Protection Agency's ("EPA") PFOA Stewardship Program. The participating companies made voluntary commitments to reduce product content and facility emissions of PFOA and related chemicals by 95%, no later than 2010.

46.    Further, PFOA / C8 has been studied extensively by, among others, a Science Panel that was formed out of a class action settlement from a lawsuit arising from contamination from DuPont's Washington Works located in Wood County West Virginia. This panel consisted of three epidemiologists who were specifically tasked with determining whether there was a probably link between C8 and human diseases. The panel found probable links between PFOA and kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, pregnancy induced hypertension (including preeclampsia), and hypercholesterolemia.

47.    In the May 2015 "Madrid Statement on Poly- and Perfluoroalkyl Substances (PFASs)[2]," scientists and other professionals from a variety of disciplines, concerned about the production and release into the environment of PFOA's, called for greater regulation, restrictions,

---

[2] Blum A, Balan SA, Scheringer M, Trier X, Goldenman G, Cousins IT, Diamond M, Fletcher T, Higgins C, Lindeman AE, Peaslee G, de Voogt P, Wang Z, Weber R. 2015. The Madrid statement on poly- and perfluoroalkyl substances (PFASs). Environ Health Perspect 123:A107–A111; http://dx.doi.org/10.1289/ehp.1509934

limits on the manufacture and handling of any PFOA containing product, and to develop safe non-fluorinated alternatives to these products to avoid long-term harm to human health and the environment.

48.    As of May 2016, the EPA has issued Lifetime Health Advisories and Health Effects Support Documents for PFOA and PFOS[3]. The EPA identifies the concentration of PFOA or PFOS in drinking water at or below which health effects are not anticipated to occur over a lifetime of exposure at 70 parts per trillion (ppt). While health advisories are non-regulatory, they reflect the EPA's assessment of the best available peer-reviewed science.

49.    PFOA gets into the environment from industrial facilities that make PFOA or use PFOA to make other products. It also enters the environment when released from PFOA-containing consumer and commercial products during their use and disposal.

50.    PFOA can remain in the environment, particularly in water, for many years and can move through soil and into groundwater, or be carried in air.

51.    Human studies show associations between increased PFOA levels in blood and an increased risk of several health effects, including high cholesterol levels, changes in thyroid hormone, ulcerative colitis (autoimmune disease), pre-eclampsia (a complication of pregnancy that includes high blood pressure), and kidney and testicular cancer.

52.    These injuries can arise months or years after exposure to PFOA.

53.    PFOA's extreme persistence in the environment and its toxicity, mobility and bioaccumulation potential, pose potential adverse effects to human health and the environment.

---

[3] Lifetime Health Advisories and Health Effects Support Documents for Perfluorooctanoic Acid and Perfluorooctane Sulfonate, 81 Fed. Reg. 101 (May 25, 2016)

**AFFF Background**

54.     Aqueous film forming foam (AFFF) is a Class-B firefighting foam. It is water based and used to extinguish fires that are difficult to fight, particularly those that involve petroleum or other flammable liquids.

55.     AFFF was introduced commercially in the mid-1960s and rapidly became the primary fire fighting foam in the U.S. and many parts of the world. AFFF provided superior performance over normal Protein foam, which had been in wide spread use since World War II.

56.     AFFF's are synthetically formed by combining fluorine free hydrocarbon foaming agents with highly fluorinated surfactants. When mixed with water, the resulting solution has the characteristics needed to produce an aqueous film that spreads across the surface of a hydrocarbon fuel. It is this film formation feature that provides fire extinguishment and is the source of the designation, aqueous film forming foam.

57.     The Air Force began using PFC-based AFFF in 1970 to extinguish fuel-based fires.

58.     Beginning in 2009, the USAF followed the EPA issued short-term provisional health advisory of 400 ppt for PFA and 200 ppt of PFOS. The USAF now applies the current EPA lifetime exposure health advisory of 70 ppt for both PFOA and PFOS.[4]

59.     Fluorosurfactants used in 3M's AFFF were produced by a unique process known as electrochemical fluorination (ECF). The ECF process results in a product that contains and/or breaks down into compounds containing PFOA and/or PFOS.

60.     In the foam industry, concentrates are typically referred to as "3%" or "6%" concentrate, depending on the mixture rate with water. AFFF concentrates contain about 60-90% water and have a fluorine content of about 0.3-1.8%.

---

[4] *Air Force applies new EPA guidance*, Air Force Civil Engineer Center Public Affairs, May 19, 2016.

61.     AFFF procured in the U.S. was specified to conform to either a foam standard of Underwriters Laboratory (UL) or a more stringent military specification ("MilSpec"). MilSpec AFFF's contain more fluorosurfactant and more fluorine than UL agents.

62.     AFFF's are used by the U.S. military, oil refineries and other, petrochemical industries, civil aviation and fire departments throughout the country.

**AFFF Usage in the Fountain Watershed Area**

63.     Upon information and belief, 3M, Ansul and National Foam each manufactured AFFF containing PFCs, among other reasons, for sale to the Department of Defense, and Defendants sold AFFF that was used at Peterson Airforce Base.

64.     It estimated that 75% of the military AFFF inventory is ECF-based product. This is not surprising since for most of the past 30 years 3M was the primary supplier of AFFF to the DOD [Department of Defense] stock system.[5]

65.     The military Qualified Products Database listed 3M AFFF products as early as 1970, National Foam products by 1973, and Ansul products as early as 1976.[6]

66.     According to a 2011 Department of Defense risk alert document, "through 2001, the DoD purchased AFFF from 3M and/or Ansul, Inc. 3M supplied PFOS-based AFFF under the product name, 3M Light Water AFFF."[7]

67.     At any given time during its operation, Peterson housed and used thousands of gallons of AFFF concentrate manufactured by Defendants. The AFFF was expected to reach Peterson without substantial change in the condition in which it was sold to the Air Force, and it did.

---

[5] Fire Fighting Foam Coalition, "Estimated Quantities Of Aqueous Film Forming Foam in the United States", August, 2004.
[6] http://dcppe.org/Systems/AFFF/MIL-F-24385%20QPL%20History%20for%20Type%206%20AFFF.pdf
[7] DoD Risk Alert #03-11, "Aqueous Film Forming Foam", http://www.denix.osd.mil/cmrmp/ecmr/ecprogrambasics/resources/chemical-material-emerging-risk-alert-for-afff/

68.     Air Force personnel conducted training exercises at Peterson including firefighting and explosion training that used of AFFF manufactured by Defendants for decades.

69.     Upon information and belief, instructions and warning labels and material safety data sheets that were provided with the AFFF by the Defendants, which, at least at significant times, did not fully describe the health and environmental hazards of AFFF which they knew or should have known.

70.     Upon information and belief, Defendants had known of these health and environmental hazards for years. For example, by the mid-1980s, 3M began a major program to review personnel handling of fluorochemicals and determined that fluorochemicals could bioaccumulate.

71.     3M, who was the predominant manufacturer of AFFF, ceased production of PFOS-based AFFF in 2002. Under pressure from the EPA, on May 16, 2000, 3M announced it would phase out production of two synthetic chemicals, PFOS and PFOA, that it had developed more than fifty years earlier.[8]

72.     An EPA internal memo on the day of 3M's phase out announcement stated: "3M data supplied to EPA indicated that these chemicals are very persistent in the environment, have a strong tendency to accumulate in human and animal tissues and could potentially pose a risk to human health and the environment over the long term…[PFOS] appears to combine Persistence, Bioaccumulation, and Toxicity properties to an extraordinary degree."[9]

---

[8] 3M press release, "3M Phasing Out Some Of Its Specialty Materials", May 16, 2000, http://www.chemicalindustryarchives.org/dirtysecrets/scotchgard/pdfs/226-0641.pdf#page=1
[9] EPA internal memo, "Phaseout of PFOS", May 16, 2000, http://www.chemicalindustryarchives.org/dirtysecrets/scotchgard/pdfs/226-0629.pdf#page=2

73.     In contrast, 3M's news release insisted that "our products are safe" while extolling their "principles of responsible environmental management" as driving the cessation of production.[10]

74.     An August 2016 U.S. Army Corps of Engineers study, "Preliminary Assessment Report for Perfluorinated Compounds at Peterson Air Force Base", confirmed the use of AFFF at Peterson and that the fire training areas on the base were possible sources of PFC contamination of the groundwater supply.[11]

75.     Upon information and belief, personnel at Peterson continued to use AFFF containing PFCs for training and emergencies after 2002.

**PFOA and PFOS Contamination**

76.     For example, "It has reached the point where the water in all 32 of the Security Water and Sanitation District's municipal wells is contaminated with PFCs at levels exceeding an EPA health advisory limit of 70 parts per trillion. At one well, PFCs have hit 1,370 PPT, federal data show—nearly 20 times higher than the EPA health advisory. EPA officials recommended that pregnant women and small children should not drink local water."[12]

77.     In May 2016, Plaintiffs and the Plaintiff class were advised that their household water was contaminated with PFCs at hazardous levels and advised to seek alternate drinking water supplies.

78.     Groundwater wells tested within the Class Area have shown elevated concentrations of PFCs.

---

[10] 3M press release, "3M Phasing Out Some Of Its Specialty Materials", May 16, 2000, http://www.chemicalindustryarchives.org/dirtysecrets/scotchgard/pdfs/226-0641.pdf#page=1
[11] U.S. Army Corps of Engineers, "Final Preliminary Assessment Report for Perfluorinated Compounds at Peterson Air Force Base El Paso County, Colorado", August, 2016.
[12] Bruce Finley, *Drinking water in three Colorado cities contaminated with toxic chemicals above EPA limits*, DENVER POST (Jun. 15, 2016, 4:08 PM), http://www.denverpost.com/2016/06/15/colorado-widefield-fountain-security-water-chemicals-toxic-epa/

## CLASS ACTION ALLEGATIONS

79.     Plaintiffs incorporate the forgoing paragraphs as though the same were set forth at length herein.

80.     Plaintiffs bring this action as a class action on their own behalf and on behalf of all other persons similarly situated as members of the proposed subclasses and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure, subject to amendment and additional discovery as follows:

    a.    all residents of the Fountain Creek Watershed Area who have consumed water from the municipal water supply (the "Municipal Water Bodily Injury Class"); and

    b.    all residents of the Fountain Creek Watershed Area who have consumed water from water supplied from private wells (the "Private Water Bodily Injury Class"); and

    c.    all owners of real property in the Fountain Creek Watershed Area (the "Property Damage Class").

81.     Plaintiffs are members of both the proposed Bodily Injury and Property Damage Classes they seek to represent. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

82.     Excluded from the Class are:

    a.    Defendants, including any entity or division in which Defendants have a controlling interest, along with their legal representative, employees, officers, directors, assigns, heirs, successors, and wholly or partly owned subsidiaries or affiliates;

    b.    the Judge to whom this case is assigned, the Judge's staff, and the Judge's immediate family;

    c.    any class counsel or their immediate family members; and

    d.    all governmental entities.

83.     Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal that any Class should be expanded, divided into additional subclasses, or modified in any other way.

**Numerosity and Ascertainability**

84.     This action meets the numerosity requirement of Fed. R. Civ. P. 23(a)(1), given that the number of impacted residents in the Fountain Creek Watershed Area and property owners, upon information and belief, has reached the thousands, making individual joinder of class members' respective claims impracticable. While the exact number of class members is not yet known, a precise number can be ascertained from U.S. Federal Census records, the State of Colorado, and the public records of the municipal entities in the Fountain Creek Watershed area, and through other appropriate discovery. The resolution of the claims of the class members in a single action will provide substantial benefits to all parties and the Court. It is expected that the class members will number in the thousands.

85.     Finally, Class members can be notified of the pendency of this action by Court-approved notice methods.

**Typicality**

86.     Pursuant to Federal Rules of Civil Procedure 23(a)(3), Plaintiffs' claims are typical of the claims of class members, and arise from the same course of conduct by Defendants. Plaintiffs' persons and real property, like all Class Members, have been damaged by Defendants' misconduct in that they have incurred damages and losses related to the introduction of PFOA, PFOS, and other toxic substances into the municipal water supplies operated in the Fountain Creek Watershed area as well as private wells in the area, causing personal injury and property damages.

87.     Furthermore, the factual bases of Defendants' actions and misconduct are common to all Class Members and represent a common thread of misconduct resulting in

common injury to all Class Members. The relief Plaintiffs seek is typical of the relief sought for absent Class Members.

**Adequacy of Representation**

88.     Plaintiffs will serve as fair and adequate class representatives as their interests, as well as the interests of their counsel, do not conflict with the interest of other members of the class they seek to represent. Further, Plaintiffs have retained counsel competent and well experienced in class action litigation and environmental tort litigation.

89.     Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither the Plaintiffs nor their counsel have interests adverse to the Class.

**Predominance of Common Issues**

90.     There are numerous questions of law and fact common to Plaintiffs and Class Members that predominate over any question affecting only individual Class Members, making it appropriate to bring this action under Rule 23(b)(3). The answers to these common questions will advance resolution of the litigation as to all Class Members. These common legal and factual issues include the following:

a)     Whether Defendants engaged in the conduct alleged herein;

b)     Whether Defendants knew or should have known that exposure to PFOA and PFOS could increase health risks; Whether Defendants knew or should have known that their manufacture of AFFF containing PFOA and PFOS was unreasonably dangerous;

c)     Whether Defendants knew or should have known that their AFFF contained persistent, stable and mobile chemicals that were likely to contaminate groundwater water supplies;

d)      Whether Defendants failed to sufficiently warn users of the potential for harm that resulted from use of their products;

e)      Whether Defendants became aware of health and environmental harm caused by PFOA and PFOS in their AFFF products and failed to warn users and Plaintiffs and the Class of same

f)      The extent to which Defendants knew about the PFOA and PFOS contamination in the water in the Fountain Creek Watershed area

g)      The extent to which Defendants knew about the PFOA and PFOS contamination in the water supply systems operated by the municipal entities in the Fountain Creek Watershed area;

h)      The extent to which Defendants knew about the PFOA and PFOS contamination in the water supplied to private wells of residents of the Fountain Creek Watershed area

i)      Whether the Defendants owed a duty to the Plaintiffs and the Class to refrain from the actions that caused the contamination of the drinking water with PFOA and PFOS;

j)      Whether Defendants made unlawful and misleading representations or material omissions with respect to the health impacts of PFOA and PFOS;

k)      For the Bodily Injury Classes, whether any health issue or bodily injury of Plaintiffs and the Class are attributable to exposure of PFOA and PFOS in the water supply;

l)      For the Property Damage Classes, whether the PFOA and contamination caused and continues to cause:

(1) a continuous invasion of the property rights of the Plaintiffs and Class such that the property values in the Fountain Creek Watershed Area have and/or continue to decline in value following the disclosure of the PFOA contamination,

(2) have substantially interfered with Plaintiffs' and the Class' use and enjoyment of their property

ii)     a continuous invasion of the property rights of the Plaintiffs and the Subclass; and

m)     Whether Plaintiffs and Class Members are entitled to damages and other monetary relief and other equitable relief, including but not limited to punitive damages, and if so, in what amount.

n)     Whether the members of the Classes have sustained damages and the proper measure of damages.

o)     Whether Defendants are strictly liable to Plaintiffs and the Class for their actions;

p)     Whether Defendants were unjustly enriched by their actions at the expense of Plaintiffs and the classes.

**Superiority**

91.     The class action mechanism is superior to any other available means of the fair and efficient adjudication of this case. Further, no unusual difficulties are likely to be encountered in the management of this class action. Given the great number of Fountain Creek Watershed Area residents impacted by Defendants' conduct, it is impracticable for Plaintiffs and the Class to individually litigate their respective claims for Defendants' complained of conduct as to do so would risk inconsistent or contradictory judgments and increase delays and expense to both parties and the court system. Therefore, the class action mechanism presents considerably less management challenges and provides the efficiency of a single adjudication and comprehensive oversight by a single court.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION:

### Negligence

92.     Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

93.     This cause of action is brought pursuant to Colorado law.

94.     Defendants knew or should have known that exposure to PFOA and PFOS was hazardous to the environment and to human health.

95.     Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling AFFF, containing PFC's, was hazardous to human health and the environment.

96.     Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling AFFF containing PFC's would result in the contamination of the water supply in the Fountain Creek Watershed Area as a result of its proximity to Peterson Airforce Base and Colorado Springs Municipal Airport.

97.     Knowing of the dangerous and hazardous properties of the AFFF, Defendants had the duty to warn of the hazards associated with AFFF entering and poisoning the environment and groundwater.

98.     Defendants knew or should have known that safety precautions would be required to prevent the release of PFOA and PFOS into the surrounding environment.

99.     Defendants, as manufacturers, marketers, and sellers of AFFF owed Plaintiffs and the Class a cognizable duty to exercise reasonable care to ensure that AFFF was manufactured,

marketed, and sold in such a way as to ensure that the end users of AFFF were are of the potential harm PFOA and PFOS can cause to human health and the environment.

100.    Upon learning of the release of the contaminants, Defendants owed Plaintiffs and the Class a duty to warn and notify Plaintiffs and the classes of the release of the contamination before it injured Plaintiffs and the Class and their property and/or to act reasonably to minimize the damage to Plaintiffs and their property.

101.    Defendants breached their duty by allowing PFOS and PFOA to be released into the drinking water (both the municipal and private wells) of the Fountain Creek Watershed Area through their failure to warn and notify the end users of AFFF about the danger that PFOS and PFOA would enter into the environment and groundwater.

102.    As such, the Defendants, negligently, gross negligently, recklessly, willfully, wantonly, and/or intentionally breached their legal duties to the Plaintiffs and the class, causing the contamination of drinking water in and around the residences of Plaintiffs and the Class.

103.    Defendants further breached the duties owed to the Plaintiffs and the Class by failing to take reasonable, adequate, and sufficient steps or actions to eliminate, correct, or remedy any contamination after it occurred.

104.    Defendants failure to notify the Plaintiffs and the Class in a timely manner of the contamination of the Fountain Creek Watershed Area's drinking water, and, consequently, the presence of PFOA and PFOS in the real properties of Plaintiffs constitutes another breach of the duties that Defendants owed the Plaintiffs and the Class.

105.    Defendants' breaches of their duties were direct and proximate causes of Plaintiffs' and the Class' damages and the imminent, substantial, and impending harm to their homes and health.

106.     Defendants breaches of their duties caused the drinking water in both the municipal and private wells to become contaminated with unsafe and dangerous levels of PFOA and PFOS.

107.     Further, Defendants' breach of their duty to timely notify the community and act reasonably in warning of the presence of PFOA and PFOS in AFFF, Plaintiffs and the Class were forestalled from undertaking effective and immediate remedial measures, and Plaintiffs and the Class have expended and/or will be forced to expend significant resources to test, monitor, and remediate the effects of Defendants' negligence for many years into the future.

108.     Plaintiffs and the Class suffered foreseeable injuries and damages as a proximate result of said Defendants' negligent breach of their duties as set forth above. At the time Defendants breached their duties to Plaintiffs and the Class, Defendants' acts and/or failures to act posed recognizable and foreseeable possibilities of danger to Plaintiffs and the Class so apparent as to entitle them to be protected against such actions or inactions.

109.     Accordingly, Plaintiffs and the Classes seek damages from Defendants, in an amount to be determined at trial, directly resulting from their injuries to their persons and property, in a sufficient amount to compensate them for the injuries and losses sustained and to restore Plaintiffs and the Class to their original position, including but not limited to the difference between the current value of their properties and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, injuries to persons, including the need for medical monitoring as an element of damages, and actual, consequential, and nominal damages, flowing from the negligence which are the natural and proximate result of Defendants conduct in an amount to be proved at trial.

## AS AND FOR A SECOND CAUSE OF ACTION

### **Private Nuisance**

110.    Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

111.    This cause of action is brought pursuant to the laws of Colorado.

112.    Plaintiffs and the Property Damage Class, as described above, are owners of real property with the right of possession.

113.    In a private nuisance claim, it must be established that (1) the defendant's conduct unreasonably interfered with the use and enjoyment of the plaintiff's property, (2) the interference was so substantial that it would have been offensive or caused inconvenience or annoyance to a reasonable person in the community, and (3) the interference was either negligent or intentional. *See, Public Service Co. v. Van Wyk*, 27 P.3d 377, 391 (Colo.2001).

114.    At all times relevant to the present cause of action, Defendants manufactured, marketed, and sold the AFFF that was used at Peterson Air Force Base and the Colorado Springs Municipal Airport that resulted in the contamination of the water supply relied upon by Plaintiffs and Property Damage Class at all relevant times.

115.    At the time the above-described, affirmative, voluntary, and intentional acts were performed by Defendants, Defendants had good reason to know or expect that large quantities of PFOA and PFOS would and/or could be introduced into the properties of Plaintiffs and the Property Damage Class.

116.    The above-described affirmative, voluntary, and intentional acts were performed with the reckless disregard of the potential for PFOA and PFOS to be disbursed through the water and onto the land and property of Plaintiffs and the Property Damage Class.

24

117.    Defendants' negligent, reckless, willful, and/or wanton actions and/or intentional failures to act caused an unknown quantity of PFOA, PFOS and possibly other toxic substances to be released into the drinking water for Fountain Creek Watershed Area.

118.    The introduction of unknown quantities of PFOA, PFOS and other toxic substances onto the property of the Plaintiffs and Property Damage Class unreasonably interfered with the use and enjoyment of their property.

119.    The potential danger from the drinking water at their residences has caused the Plaintiffs and the Class significant inconvenience and expense.

120.    This constitutes a substantial interference with the use of the properties such tthat it is offensive and has caused significant inconvenience or annoyance.

121.    By reason of the foregoing, Defendants are liable to Plaintiffs and the Class for the damages that they have suffered as a result of Defendants' actions, the amount of which will be determined at trial, plus reasonable attorneys' fees and costs.

### AS AND FOR A THIRD CAUSE OF ACTION

### Medical Monitoring

122.    Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

123.    This cause of action is brought pursuant to Colorado law.

124.    Defendants knew or should have known that exposure to PFOA and PFOS was hazardous to the environment and to human health.

125.    Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling AFFF, containing PFC's, was hazardous to human health and the environment.

126.    Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling AFFF containing PFC's would result in the contamination of the water supply in the Fountain Creek Watershed Area as a result of its proximity to Peterson Airforce Base and Colorado Springs Municipal Airport.

127.    A claim for medical monitoring requires (1) significant exposure to a hazardous substance through the tortious actions of defendant; (2) an increased risk of contracting a serious latent disease; (3) increased risk makes periodic diagnostic medical examinations reasonably necessary; and (4) procedures exist which make the early detection and treatment of the disease possible and beneficial. *See Cook v. Rockwell International Corp.*, 755 F. Supp. 1468, 1477 (D. Colo. 1991).

128.    The Plaintiffs and Bodily Injury Classes have been exposed to PFOA, PFOS, and potentially other toxic substances that resulted from the use and storage of the Defendants' AFFF at Peterson Air Force Base and Colorado Springs Municipal Airport.

129.    As described more fully above in this Complaint, PFOA and PFOS exposure seriously increase the risk of contracting numerous diseases.

130.    The significantly increased risks associated with exposure to PFOA, make periodic diagnostic medical examinations reasonable and necessary.

131.    A thorough medical monitoring plan can and should be developed for the Plaintiffs and Bodily Injury Classes that will assist in the early detection and beneficial treatment of the numerous diseases that can develop as a result of exposure to PFOA and PFOS.

## AS AND FOR A FOURTH CAUSE OF ACTION

### Products Liability, Failure to Warn

132.    Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

133.    This cause of action is brought pursuant to Colorado law.

134.    Defendants knew or should have known that exposure to PFOA and PFOS was hazardous to the environment and to human health.

135.    Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling AFFF, containing PFC's, was hazardous to human health and the environment.

136.    Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling AFFF containing PFC's would result in the contamination of the water supply in the Fountain Creek Watershed Area as a result of its proximity to Peterson Airforce Base and Colorado Springs Municipal Airport.

137.    Knowing of the dangerous and hazardous properties of the AFFF, Defendants had the duty to warn of the hazards associated with AFFF entering and poisoning the environment and groundwater.

138.    Defendants failed to provide sufficient warning to the end users of AFFF, including Peterson Air Force Base and the Colorado Springs Municipal Airport, that the use and storage of Defendants' product would cause the product to be released into the environment and cause the contamination of the environment, groundwater, and drinking water, with PFOA, PFOS, and potentially other toxic substances.

139.    Further, this contamination then led to the exposure of residents of the Fountain Creek Watershed area to the toxins and increased their risk of numerous diseases as more fully set forth above.

140.    Adequate instructions and warnings on the AFFF products could have reduced or avoided these foreseeable risks of harm to both the residents of the Fountain Creek Watershed Area and their property.

141.    Had Defendants provided adequate warnings, the residents of the Fountain Creek Watershed Area could have taken measures to avoid or lessen their exposure.

142.    Had Defendants provided adequate warnings, the users of AFFF at Peterson Air Force Base and the Colorado Springs Municipal Airport could have taken steps to reduce or prevent the release of PFOA, PFOS, and potentially other toxic substances into the environment, groundwater, and drinking water.

143.    Defendants' failure to warn was a direct and proximate cause of the environmental and health impacts from PFOA, PFOS, and potentially other toxic substances, that came from the use and storage of AFFF at Peterson Air Force Base and Colorado Springs Municipal Airport.

144.    As such, Defendant's failure to provide adequate and sufficient warnings for the AFFF that they manufactured, marketed, and sold renders the AFFF a defective product.

145.    As a result of Defendants' conduct and the resulting contamination, the value and marketability of the property of the Plaintiffs' and Property Damage Class has been and will continue to be diminished. Plaintiffs and the Class Members have suffered the need for and the cost of remediation of their properties and or mitigation systems for those properties, and the cost of alterative water. As a result of the contamination Plaintiffs and the Plaintiff Class have lost

use and enjoyment of their properties and have suffered annoyance and discomfort, inconvenience and annoyance as a consequence of the contamination of their properties by Defendants.

146.    As a result of Defendants' conduct and the resulting contamination, the Plaintiffs and the Bodily Injury Classes have been injured in that their exposure to PFOS, PFOA, and potentially other toxic substances has caused them to develop illnesses associated with this exposure as more fully described and/or significantly increased their risk of developing those illnesses.

147.    As a result of Defendants' manufacture, sale or distribution of a defective product, Defendants are strictly liable in damages to the Plaintiffs and the Plaintiff Classes.

148.    Defendants' acts were willful, wanton, reckless and/or conducted with a reckless indifference to the rights of Plaintiffs and members of the Plaintiff Classes.

## AS AND FOR A FIFTH CAUSE OF ACTION

### Products Liability, Defective Design

149.    Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

150.    This cause of action is brought pursuant to Colorado law.

151.    Defendants knew or should have known that exposure to PFOA and PFOS was hazardous to the environment and to human health.

152.    Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling AFFF, containing PFC's, was hazardous to human health and the environment.

153.     Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling AFFF containing PFC's would result in the contamination of the water supply in the Fountain Creek Watershed Area as a result of its proximity to Peterson Airforce Base and Colorado Springs Municipal Airport.

154.     Knowing of the dangerous and hazardous properties of the AFFF, Defendants could have manufactured, marketed, and sold alternative designs or formulations of AFFF that did not contain PFC's.

155.     These alternative designs and/or formulations were already available, practical, and technologically feasible.

156.     The use of these alternative designs would have reduced or prevented the reasonably foreseeable harm to persons and property that was caused by the Defendants' manufacture, marketing, and sale of AFFF that contained PFC's.

157.     Additionally, the AFFF that was manufactured, marketed, and sold by the Defendants contained PFC's that were so toxic and dangerous to human health and the environment, the toxic chemicals were so mobile and persistent, that the act of designing, formulating, manufacturing, marketing, and selling this product was unreasonably dangerous under the circumstances.

158.     Further, this contamination then led to the exposure of residents of the Fountain Creek Watershed area to the toxins and increased their risk of numerous diseases as more fully set forth above.

159.     The AFFF manufactured, marketed, and sold by the Defendants was a defective design as the foreseeable risk of harm could have been reduced or eliminated by the adoption of a reasonable, alternative design that was not unreasonably dangerous.

160.    Defendants' defective design and formulation of AFFF was a direct and proximate cause of the environmental and health impacts from PFOA, PFOS, and potentially other toxic substances, that came from the use and storage of AFFF at Peterson Air Force Base and Colorado Springs Municipal Airport.

161.    As a result of Defendants' defective design and formulation of AFFF, the resulting contamination, the value and marketability of the property of the Plaintiffs' and Property Damage Class has been and will continue to be diminished. Plaintiffs and the Class Members have suffered the need for and the cost of remediation of their properties and or mitigation systems for those properties, and the cost of alterative water. As a result of the contamination Plaintiffs and the Plaintiff Class have lost use and enjoyment of their properties and have suffered annoyance and discomfort, inconvenience and annoyance as a consequence of the contamination of their properties by Defendants.

162.    As a result of Defendants' defective design and formulation of AFFF, the resulting contamination, the Plaintiffs and the Bodily Injury Classes have been injured in that their exposure to PFOS, PFOA, and potentially other toxic substances has caused them to develop illnesses associated with this exposure as more fully described and/or significantly increased their risk of developing those illnesses.

163.    As a result of Defendants' design and formulation of a defective product, Defendants are strictly liable in damages to the Plaintiffs and the Plaintiff Classes.

164.    Defendants' acts were willful, wanton, reckless and/or conducted with a reckless indifference to the rights of Plaintiffs and members of the Plaintiff Classes.

## AS AND FOR AN SIXTH CAUSE OF ACTION

### Unjust Enrichment

165.    Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

166.    This cause of action is brought pursuant to Colorado law.

167.    Defendants knew or should have known that exposure to PFOA and PFOS was hazardous to the environment and to human health.

168.    Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling AFFF, containing PFC's, was hazardous to human health and the environment.

169.    Even after Defendants' were made aware of the dangers to human health and the environement of AFFF that contained PFC's, the continued to manufacture their product.

170.    The Defendants' continued to profit from the manufacture and sale of PFC containing AFFF after learning of the unreasonably dangerous nature of their product.

171.    Defendants' did not promptly cease selling or recall their PFC containing AFFF after learning of the dangers to human health and the environment from PFC's.

172.    As such, the Court should not permit the Defendants' to retain the benefits in the form of profits from the sale of PFC containing AFFF and the expenditures saved by the Defendants' when they did not promptly develop or invest in non-PFC containing AFFF.

173.    These expenditures saved and profits made should be awarded as a remedy in the present action.

### PUNITIVE DAMAGES

174.    Plaintiffs and the Class hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

175.    Upon information and belief, Defendants engaged in willful, wanton, malicious, and or/reckless conduct that caused the foregoing property damage, nuisances, and injuries upon the persons and properties of Plaintiffs and the Class, disregarding their protected rights.

176.    Defendants' willful, wanton, malicious, and/or reckless conduct includes but is not limited to Defendants' failure to take all reasonable measures to ensure PFOA-containing waste would be effectively disposed of and not discharged into the surrounding environment.

177.    Defendants have caused great harm to the property and water supplies of Plaintiffs and the Class and demonstrated an outrageous conscious disregard for their safety with implied malice, warranting the imposition of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs and the Class demand judgment against Defendants, and each of them, jointly and severally, and request the following relief from the Court:

A.    an award certifying the proposed Bodily Injury and Property Damage Classes, designating Plaintiffs as the named representatives and designating the undersigned as Class Counsel;

B.    a declaration that Defendants acted with negligence, gross negligence, and/or willful, wanton, and careless disregard for the health, safety, and property of Plaintiffs and members of the Class.

C.    an order requiring that Defendants implement a testing and monitoring protocol to test each property and its drinking water for the properties belonging to the members of the Property Damage Class and, where appropriate, to implement appropriate remedial measures.

D.    an order establishing a medical monitoring protocol for Plaintiffs and the Bodily Injury Class.

E. an award to Plaintiffs and the Class of general, compensatory, exemplary, consequential, nominal, and punitive damages;

F. an order for an award of attorney fees and costs, as provided by law;

G. an award of pre-judgment and post-judgment interest as provided by law, and

H. an order for all such other relief the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury of any and all issues in this matter so triable pursuant to Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**NAPOLI SHKOLNIK PLLC**

By:   /s/ Hunter Shkolnik
Hunter Shkolnik *PHV pending*
Paul J. Napoli, *PHV pending*
Louise Caro, *PHV pending*
360 Lexington Avenue, Eleventh Floor
New York, NY, 10017
(212) 397-1000
hunter@napolilaw.com
pnapoli@napolilaw.com
lcaro@napolilaw.com

**MCDIVITT LAW FIRM**

By:   /s/ Michael W. McDivitt
Michael W. McDivitt (#5835)
19 E. Cimarron Street
Colorado Springs, CO 80903
(719) 471-3700
mmcdivitt@mcdivittlaw.com

*Attorneys for Plaintiff and the putative classes*

September 22, 2016